IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

Portland Division

KAREN N. (BAKER) WELLS,                    CV 09-1372-MA

       Plaintif,                           AMENDED OPINION
v.                                                    AND ORDER
                                           (omitting 406(b)
MICHAEL ASTRUE,                            fee filing procedure)
Commissioner of Social
Security,

       Defendant.

ALAN STUART GRAF
316 Second Road
Summertown, TN 38483
(931) 964-3123

       Attorney for Plaintiff

DWIGHT C. HOLTON
United States Attorney
ADRIAN L. BROWN
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, OR  97204-2902
(503) 727-1003


1  - AMENDED OPINION AND ORDER

BENJAMIN J. GROEBNER
Special Assistant United States Attorney
Office of the General Counsel
Social Security Administration
701 Fifth Avenue, Suite 2900 MS/901
Seattle, WA  98104-7075
(206) 615-2494

    Attorneys for Defendant

MARSH, Judge.

    Plaintiff Karen Wells seeks judicial review of the Commissioner's final decision denying her August 3, 2006, application for supplemental security income (SSI) under Title XVI Of the Social Security Act, 42 U.S.C. §§ 1381-1383f.

    For the following reasons, I **REVERSE** the Commissioner's final decision denying plaintiff's SSI claim and **REMAND** this matter for the immediate payment of benefits.

    Plaintiff was 45 years old on the date the Commissioner issued his final decision.  In her SSI application, plaintiff claimed she has been disabled since August 1, 2004, because of migraine headaches, fibromyalgia, and nausea.

    On May 13, 2009, the Administrative Law Judge (ALJ) held a hearing at which Plaintiff, her mother Margie Height, and vocational expert Vernon Arndt, testified.  On July 31, 2009, the ALJ issued a decision that plaintiff was not disabled.  On September 25, 2009, the Appeals Council denied plaintiff's request for review.  The ALJ's decision, therefore, is the Commissioner's final decision for purposes of judicial review.

2  - AMENDED OPINION AND ORDER

## THE ALJ'S FINDINGS

The Commissioner uses a five-step sequential inquiry to determine whether a claimant is disabled.  Bowen v. Yuckert, 482 U.S.137, 140 (1987).  See also 20 C.F.R. § 404.1520.  Plaintiff bears the burden of proof at Steps One through Four.  See Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999).

At Step One, the ALJ found plaintiff has not engaged in substantial gainful activity since she filed her SSI application.

At Step Two, the ALJ found plaintiff has severe impairments related to non-epileptic seizures, asthma, fibromyalgia, and episodic marijuana and alcohol abuse.  20 C.F.R. §404.1521 (a severe impairment or combination of impairments significantly limits an individual's ability to do basic work activities).

At Step Three, the ALJ found plaintiff's impairments do not meet or equal a listed impairment and plaintiff has the residual functional capacity (RFC) to perform light work in jobs involving occasional reaching, handling, pushing or pulling with both hands, balancing, or climbing.  Plaintiff, however, should not perform work requiring her to stoop, kneel, crouch or crawl.  Plaintiff also should not work around dust, odors, fumes, extreme hot or cold temperatures, and unprotected heights.

At Step Four, the ALJ found plaintiff is able to do her past relevant jobs as a census taker, telemarketer, and office clerk.

At Step Five, the ALJ found plaintiff is not disabled.

3  - AMENDED OPINION AND ORDER

The Commissioner concedes the ALJ erred in his analysis of the evidence by (1) finding plaintiff's migraine headaches are not severe; (2) failing to consider lay testimony of plaintiff's mother; (3) finding plaintiff is able to do her past relevant work, and (4) failing to find plaintiff's mental impairments are severe.

In addition to the above errors, plaintiff asserts the ALJ erred in rejecting her testimony based on lack of credibility and, accordingly, finding her impairments were not severe.

In light of the ALJ's errors in evaluating the evidence, plaintiff urges the court to reverse the Commissioner's final decision denying her SSI claim and remand this matter for the immediate payment of benefits.

The Commissioner, however, contends the medical evidence now in the record does not support plaintiff's claim as to the intensity, persistence, or limiting effects of her migraine headaches.  The Commissioner urges the court to remand the case for the ALJ to consider the lay evidence, to further develop the medical record regarding plaintiff's migraine headaches and mental impairments, and based on the newly developed evidence, to make a new determination as to whether there are other jobs that plaintiff is able to perform in light of her physical and mental limitations.

4  - AMENDED OPINION AND ORDER

As part of the remand, the Commissioner requests that the Court order plaintiff to submit to a consultative examination and require the ALJ to obtain expert medical testimony that addresses both the extent of plaintiff's functional limitations resulting from her migraine headaches and the effectiveness of prescribed medication in treating them.

### GENERAL LEGAL STANDARDS

The initial burden of proof rests on the claimant to establish disability. <u>Roberts v. Shalala</u>, 66 F.3d 179, 182 (9th Cir. 1995), <u>cert</u>. <u>denied</u>, 517 U.S. 1122 (1996).  To meet this burden, a claimant must prove the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or psychological impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C § 423(d)(1)(A).  The Commissioner's decision must be affirmed if it is based on proper legal standards and the findings are based on substantial evidence in the record.  42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." <u>Andrews v. Shalala</u>, 53 F.3d 1035, 1039  (9th Cir. 1995).

The court must consider all the evidence supporting and detracting from the Commissioner's decision. <u>Martinez v.</u>

<u>Heckler</u>, 807 F.2d 771, 772 (9th Cir. 1986).  The Commissioner's decision, however, must be upheld even if the "evidence is susceptible to more than one rational interpretation."  <u>Andrews</u>, 53 F.3d at 1039-40.

The Commissioner bears the burden of developing the record. <u>DeLorme v. Sullivan</u>, 924 F.2d 841, 849 (9th Cir. 1991).  The duty to further develop the record, however is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence.  <u>Mayes v. Massanari</u>, 276 F.3d 453, 459-60 (9th Cir. 2001).

The decision whether to remand a social security case for additional proceedings or for immediate payment of benefits is within the discretion of the court.  <u>Harman v. Apfel</u>, 211 F.3d 1172, 1178 (9th Cir.), <u>cert</u>. <u>denied</u>, 121 S. Ct. 628 (2000).  A case should be remanded for additional proceedings if such proceedings may remedy defects in the original proceeding.  <u>Lewin v. Schweiker</u>, 654 F.2d 631, 635 (9th Cir. 1981).

## <u>DISCUSSION</u>

The ultimate issue is whether this matter should be remanded for the immediate payment of benefits, as urged by plaintiff, or more broadly remanded for what amounts to a full review of the ALJ's analysis of the medical evidence regarding the severity of plaintiff's migraine headaches and psychological impairments, and a reformulation of plaintiff's residual functional capacity.

In light of the Commissioner's concession that the ALJ erred in most aspects of his evaluation of the medical record, based in large part on his finding that plaintiff was not a credible witness, the court concludes that finding, and how it impacts the ALJ's other inadequate findings, should be the focus of this review.

### Standard

A claimant who alleges disability based on subjective symptoms "must produce objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged. . . .'" Bunnell v. Sullivan, 947 F.2d 341, 344 (9th Cir. 1991) (quoting 42 U.S.C. § 423(d)(5)(A) (1988)).  See also Cotton v. Bowen, 799 F.2d 1403, 1407-08 (9th Cir. 1986).  The claimant need not produce objective medical evidence of the symptoms or their severity.  Smolen v. Chater, 80 F.3d 1276, 1281-82 (9th Cir. 1996).

If the claimant produces objective evidence that underlying impairments could cause the pain complained of and there is no affirmative evidence to suggest the claimant is malingering, the ALJ is required to give clear and convincing reasons for rejecting plaintiff's testimony regarding the severity of his symptoms.  Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993). See also Smolen, 80 F.3d at 1283.  To determine whether the claimant's subjective testimony is credible, the ALJ may rely on

(1) ordinary techniques of credibility evaluation such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) an unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities. Id. at 1284 (citations omitted).

If the ALJ's credibility finding is supported by substantial evidence in the record, we may not engage in second-guessing. Thomas v. Barnhart, 278 F.3d 947, 959 (9th Cir. 2002).

### Relevant Evidence

**Plaintiff's Evidence.**

Plaintiff's evidence is derived from her disability report, work history report, and hearing testimony.

Education/Work History.

Plaintiff was 50 years old on the date of the hearing. She has a high school GED certificate.

Between 1991 and May 2004, plaintiff has held jobs as a cannery worker, telemarketer, car wash manager, retirement center nurse, food delivery service label maker, rural route mail carrier, and home care-giver for her cousin, who has multiple sclerosis. She quit the last job by mutual agreement with her cousin because she was not able to perform the tasks associated with it.

Medical History.

Plaintiff appeared at the hearing carrying a cane.  She testified that one of her doctors prescribed the cane because she had scar tissue on her brain that was interfering with her balance.  She also uses it to help her cope with the physical pain she suffers as a result of fibromyalgia.

Plaintiff is prescribed Vicodin and Methadone to control pain from migraine headaches.

Plaintiff was hospitalized in December 2008 after a suicide attempt.  On admission, her blood alcohol level was above the legal limit.  She stated, however, she had drunk only one half of a beer before her admission and denied that she had a habit of drinking up to 12 beers a day.  She thought the source of that information was probably her brother, who was trying to create problems for her.

Plaintiff has been prescribed medical marijuana, but her brother sold it while he was living with her as her care-giver.

Plaintiff has Chronic Obstructive Pulmonary Disease related to her smoking and uses oxygen at night to help her breathe.  She also has Asthma and uses an inhaler six times a day.  As a result, she is unable to be around dust, fumes, or gases.

Plaintiff experiences migraine headaches twice a week that last 3-4 days.  The headaches cause her to become "sick to [her]

stomach, limit her ability to think, concentrate, or read, and impair her eyesight.  When they occur, she goes to bed, puts a pillow over her head, and cries.  She is prescribed Topomax, Methadone, and Vicodin, to control the headaches.  The medication helps.  She prefers not to take narcotic medications because of the side effects, which include lip numbness, nausea, dizziness, and fatigue.

Plaintiff also suffers from fibromyalgia, as a result of which she quit her job as a mail carrier.  She has soreness and a "dull, thudding ache" in her arms, chest, and legs.  Her pain has become worse and she is getting progressively weaker.  She is able to lift about 10 lbs and often needs to change positions, alternating sitting and standing.

Plaintiff also has pseudo-seizures during which she blacks out and sometimes falls down and/or shakes.  She quit driving because of them.  Their frequency, however, decreased after her brother left the immediate area, and now occur only rarely.

Plaintiff contends she is unable to work because of the pain caused by her migraine headache and fibromyalgia.

Daily Activities.

Plaintiff reads, watches television, and uses the computer on a daily basis.  She no longer is able to enjoy former hobbies such as hunting and fishing.  She used to have big dogs, but has

replaced them with a much smaller dog, which is easier on her legs.

Plaintiff's housework is now limited to cooking dinner once a week and putting the laundry in the washing machine. She has difficulty with any tasks that require fine hand and finger manipulation.

Plaintiff becomes depressed whenever it rains.

**Lay Evidence.**

Plaintiff's mother, Margie Height, testified that plaintiff gets "viciously sick, having seizures, vomiting, falling down, [and] having to be picked up off the floor."

Plaintiff has a poor relationship with her brother and she was stressed when he acted as her caregiver for a period of time.

Plaintiff has migraine headaches and seizures when she sleeps that cause her to wake up and vomit. She will then lay limply in bed for days like "a wet dish rag" unable to function. As a result, plaintiff's son now lives with plaintiff and takes care of her, doing the housework, cooking, and laundry.

**Medical/Mental Health Treatment Evidence.**

Good Samaritan Hospital.

In September 2005, plaintiff was treated at the Emergency Room complaining of a migraine headache. She was prescribed Demerol and Phenergan (an anti-allergy drug).

11 - AMENDED OPINION AND ORDER

A month later, she was again treated at the Emergency Room for migraine headaches.  She told the treating physician she had similar headaches "a few times a month."  She denied any other medical problems.  Plaintiff also stated her usual physician had told her to come to the Emergency Room "to get a prescription and a shot."  The Emergency Room physician intended to prescribe Demerol but called plaintiff's regular physician to confirm plaintiff's comment.  Contrary to what plaintiff had said, her physician stated plaintiff was told to stop by the office to pick up a prescription for Percocet.  On discharge from the Emergency Room, plaintiff was diagnosed with a migraine headache and was prescribed Percocet rather than Demerol.

The next day, plaintiff returned to the Emergency Room, again complaining of a migraine headache with nausea and vomiting.  She was given another prescription for Percocet, as well as Compazine to treat her nausea.

In January and April 2006, plaintiff again visited the Emergency Room and was given morphine injections to relieve the pain caused by her migraine headache.  She was referred to another physician to prescribe Percocet, if appropriate.

In August 2006, plaintiff was treated for severe pelvic pain.  She was noted as having "a very low pain threshold" and was prescribed morphine and Dilaudid.

In October 2006, after plaintiff again complained of severe pelvic pain, the treating physician recommended and plaintiff agreed to a further evaluation to determine if she suffered from endometriosis.

In May 2007, plaintiff underwent an appendectomy after complaining of nausea, vomiting, and abdominal pain.  The pre-operative diagnosis was acute appendicitis.  After the surgery, however, plaintiff's appendix was found to be normal.

Later that month, plaintiff again went to the Emergency Room complaining of "pain all over," with headaches, vomiting, diarrhea, and seizures.

In August 2008, plaintiff was again treated at the Emergency Room for a complex migraine headache and left-sided weakness.  An MRI suggested plaintiff was suffering from a complex migraine, not a functional neurologic disorder.

In November 2008, plaintiff was again treated for a migraine headache and pseudo-seizure.  Later that month plaintiff was admitted to the hospital after an apparent suicide attempt during which she severely lacerated her upper left arm.  During treatment she was remorseful and expressed willingness to seek treatment for her depression.  She told treatment providers she had a history of mild depression primarily caused by chronic pain.  On discharge, plaintiff was diagnosed with Depression, Alcohol Abuse, and Narcotic Abuse.

<u>The Corvallis Clinic, P.C.</u>

In April 2006, plaintiff underwent a neurologic examination after she complained of headaches and photophobia.  Her arm and leg strength, and her coordination were normal.  She did exhibit diminished pinprick sensation on her right side.  An MRI was abnormal, showing pineal cyst and white matter hyperintensities.  Plaintiff was diagnosed with a refractory migraine headache disorder, fibromyalgia, and probable contributing psychosocial and environmental factors.

A cervical spine MRI showed mild to moderate spondylosis with mild to moderate canal stenosis and some moderate left foraminal narrowing at C6-7.  The imaging, however, was impacted by movement, and the overall impression was that there was "no significant spinal canal or foraminal stenosis at any level."

In September 2008, neurologist Richard LaFrance, M.D. examined plaintiff.  He noted she was emaciated but in no acute distress.  She had an unstable gait and diffuse muscle pain.  An MRI was abnormal, consistent with the MRI taken in April 2006.

In December 2008, Dr. LaFrance reexamined plaintiff after her apparent suicide attempt and noted the laceration to her wrist was healing well.

In March 2009, plaintiff's physical examination was normal.  She was diagnosed with Migraine (common, intractable), Conversion Disorder, and Fibromyalgia.

14 - AMENDED OPINION AND ORDER

In June 2009, Dr. LaFrance was asked by the Social Security
Administration to evaluate plaintiff's ability to work on a
regular and continuous basis.  He opined that plaintiff could
lift and carry 11-20 lbs occasionally, sit, stand, or walk for
eight hours, and do so for four hours without interruption, in an
eight-hour work day.  Plaintiff does not need a cane to walk.
She is able to reach, handle, and push/pull occasionally, and
finger and feel frequently with both hands.  She is able to
operate controls with her feet on a continuous basis.  She should
only occasionally climb stairs and ramps and balance, and she
should never climb ladders, or scaffolds, stoop, kneel, crouch,
or crawl.  Plaintiff should avoid unprotected heights, dusts,
odors, fumes, and pulmonary irritants, and extreme temperatures.
She may frequently move mechanical parts, operate a vehicle, and
be exposed to humidity, wetness, and vibrations.  She should work
in a quiet environment, such as a library.  Plaintiff is able to
perform routine activities of daily living.

Dr. La France, however, also opined that plaintiff suffers
from "non-epileptic seizures which cause random confusion and
collapse that are a major factor in inability to work."

Benton County Health Department.

In December 2005, plaintiff began monthly cognitive
behavioral therapy sessions to alleviate her anxiety and
depression.

15 - AMENDED OPINION AND ORDER

In April 2006, a chart note reflects plaintiff "used many rationalizations" as to why she had missed previously scheduled appointments.

In May 2006, plaintiff stated her goal was to be "pain free without medication."

In November 2006, plaintiff stated she was able "to handle [her] migraines better."

In January 2007, plaintiff reported that the frequency of her migraine headaches had decreased from daily to once every week or two weeks.

In February 2007, however, plaintiff was prescribed Percocet after complaining of migraine headaches occurring daily basis.

In May 2007, plaintiff reported having "back-to-back" migraine headaches.  She was diagnosed with "chronic migraine with acute migraine" and depression.

In July 2007, plaintiff was seen for multiple lacerations and bruising caused by falls and a fight with her brother.  She was not alert or oriented and her pupils were enlarged.  She was diagnosed with substance abuse with associated imbalance and was instructed to rest.  She was given a cane to use on her walk home.

A week later, treating physician W. Scott Williams, M.D., diagnosed longstanding depression, chronic migraine headaches, and a history of pseudo-seizures secondary to stress.

16 - AMENDED OPINION AND ORDER

In August 2007, plaintiff appeared to be in good spirits and the severity of her migraine headaches had lessened.

In August 2008, Dr. Williams examined plaintiff and noted an increase in the frequency and severity of her headaches.  He also noted she was generally but not always compliant in taking her prescribed medications.

In December 2008, Dr. Williams examined plaintiff after her suicide attempt.  She was relaxed and well-groomed but appeared to be depressed.  Her facial appearance was flat and she was minimally responsive.  Two weeks later, however, plaintiff appeared to be in good health, alert and oriented.

**Medical/Mental Health Evaluation Evidence.**

<u>Allen G. Brooks, M.D. - Neurologist</u>.

In October 2006, Dr. Brooks examined plaintiff to provide a disability evaluation on behalf of DDS.  Plaintiff was alert and oriented.  The physical examination was for the most part normal, although plaintiff's gait was "a bit unstable" when she tried to tandem walk and balance on one foot.  Her arms and thighs were mildly tender to palpation.  Dr. Brooks diagnosed chronic migraine headaches and Fibromyalgia.

<u>Douglas A. Smyth, Ph.D. - Psychologist</u>.

In October 2006, Dr. Smyth also examined plaintiff to provide a psychodiagnostic evaluation on behalf of DDS.  During the examination, plaintiff was well-oriented to time, place, and

17 - AMENDED OPINION AND ORDER

person, and her cognition was grossly intact.  She cooperated, had good motivation, and did not appear to exaggerate her symptoms.  Dr. Smyth diagnosed Depressive Disorder NOS, with reported Fibromyalgia and Migraine Headaches.

Dr. Smythe concluded that his examination "was consistent with claimant[s] allegations and other information made available" to him.

**Medical/Mental Health Consultation Evidence**.

Sharon B. Eder, M.D. - Internal Medicine.

Dr. Eder reviewed plaintiff's medical records and noted she was inconsistent in taking her prescribed medications.  Dr. Eder noted "the abnormal brain MRI could be secondary to years of tobacco abuse, possible hyperlipemia and the migraines themselves."  She opined plaintiff "is non-severe mentally"  She diagnosed depression and migraines, but also opined plaintiff's statements as to the severity of her complaints were only "partially credible" and she "will be non-severe in 12 months."

Bill Hennings, Ph.D. - Psychologist.

Dr. Hennings reviewed plaintiff's medical records.  He diagnosed depression.  The only limitation he found, however, was a mild degree of difficulty in maintaining concentration, persistence, and pace.  Dr. Hennings did not consider any other medical source opinion.

18 - AMENDED OPINION AND ORDER

<u>Vocational Expert Testimony</u>.

As noted above, the ALJ found at Step Four that plaintiff is able to perform the tasks associated with all but one of her past relevant jobs.  Accordingly, the ALJ found it unnecessary to inquire of the vocational expert as to whether there were other jobs plaintiff could perform.

## Analysis

**The ALJ's Rejection of Plaintiff's Testimony**.

Plaintiff contends the ALJ did not give clear and convincing reasons for rejecting plaintiff's testimony regarding the severity of her impairments.  The Commissioner disagrees.

A claimant who alleges disability based on subjective symptoms "must produce objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged. . . .'" <u>Bunnell v. Sullivan</u>, 947 F.2d 341, 344 (9th Cir. 1991) (quoting 42 U.S.C. § 423(d)(5)(A) (1988)).  <u>See also</u> <u>Cotton v. Bowen</u>, 799 F.2d 1403, 1407-08 (9th Cir. 1986).  The claimant need not produce objective medical evidence of the symptoms or their severity.  <u>Smolen v. Chater</u>, 80 F.3d 1276, 1281-82 (9th Cir. 1996).

If the claimant produces objective evidence that underlying impairments could cause the pain complained of and there is no affirmative evidence to suggest the claimant is malingering, the ALJ is required to give clear and convincing reasons for

rejecting plaintiff's testimony regarding the severity of her symptoms. <u>Dodrill v. Shalala</u>, 12 F.3d 915, 918 (9th Cir. 1993). <u>See also</u> <u>Smolen</u>, 80 F.3d at 1283. To determine whether the claimant's subjective testimony is credible, the ALJ may rely on (1) ordinary techniques of credibility evaluation such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) an unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities. <u>Id</u>. at 1284 (citations omitted).

The ALJ found plaintiff's pain complaints were only partially credible because her "migraine headaches and pseudo-seizures diminished significantly with medication and the departure of her brother" from the area. In addition, the ALJ found plaintiff's credibility was eroded by her drug-seeking activity.

The record in part supports the ALJ's determination as to plaintiff's credibility. Plaintiff acknowledged the pseudo-seizures diminished after her brother left the area. In addition, there is significant evidence to support a finding that plaintiff engaged in drug-seeking behavior when she visited the Emergency Room at Good Samaritan Hospital in October 2005, and misrepresented to the treating physician that her usual physician

had told her to come to the Emergency Room "to get a prescription
and a shot."  As set forth above, the treating physician checked
to confirm plaintiff's statement and learned that, in actuality,
plaintiff was told to stop by her physician's office to pick up a
prescription for Percocet.  The Court also notes that, contrary
to plaintiff's testimony that she was prescribed a cane because
scar tissue on her brain interferes with her balance, the record
reflects she had been given a cane  to help her maintain her
balance on her walk home after she was treated for substance
abuse and intoxication.

    The objective medical evidence, however, does not reflect
that plaintiff's testimony regarding the severity of her migraine
headaches and their impact on her ability to work is materially
exaggerated or lacking in credibility.

**Nature of the Remand.**

    The medical record, excepting the opinions of consulting
physicians and psychologists who neither treated nor examined
plaintiff, provides substantial evidence to support a finding
that plaintiff has severe impairments relating to migraine
headaches and depression.  The court concludes no useful purpose
would be served by remanding this matter for further proceedings
in an effort to clarify the severity of those impairments when
both treating and evaluating physicians agree they are, indeed,
severe.

21 - AMENDED OPINION AND ORDER

Plaintiff's drug-seeking behavior is troubling.  The court, however, concludes plaintiff's lack of credibility based on that behavior does not preclude a finding of disability where, as noted above, there is considerable agreement among medical providers who actually treated or examined plaintiff that she has not exaggerated the severity of her impairments and resulting limitations related to migraine headaches and depression.

Moreover, a remand for purposes of evaluating the lay witness evidence of plaintiff's mother, as suggested by the Commissioner, would not likely avail the Commissioner because, if believed, the evidence supports a finding that plaintiff is unable to work.  See Lewis v. Apfel, 236 F.3d 503, 511 (9th Cir. 2001)(Lay witness evidence as to a claimant's symptoms "is competent evidence that an ALJ must take into account" unless he "expressly determines to disregard such testimony and gives reasons germane to each witness for doing so.").  The ALJ did not offer any reason why he did not consider the lay testimony in this case, or why, if it were considered, it would adversely affect plaintiff's claim.

Finally, the court does not accept the Commissioner's contention that a further examination of plaintiff as to her mental impairments would be helpful in light of Dr. Smyth's evaluation on behalf of the Commissioner, in which he reported plaintiff did not exaggerate her symptoms.

## CONCLUSION

For all the reasons stated above, the Commissioner's final decision denying benefits to plaintiff is **REVERSED** and this action is **REMANDED** for the payment of SSI benefits in accordance with this Opinion.

IT IS SO ORDERED.

DATED this ____10____ day of January, 2011.


_/s/  Malcolm F. Marsh_____
MALCOLM F. MARSH
United States District Judge

23 - AMENDED OPINION AND ORDER